**Ty Hyderally Esq.**
**Hyderally & Associates, P.C.**
33 PLYMOUTH STREET, SUITE 202
MONTCLAIR, NEW JERSEY 07042
TELEPHONE (973) 509-8500
FACSIMILE (973) 509-8501
Attorneys for Plaintiff: Raymond Bing

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **RAYMOND BING,**<br><br>**PLAINTIFF,**<br><br>**VS.**<br><br>**PORT AUTHORITY TRANS-HUDSON, GREG GADOMSKI, JOHN DEMPSEY, JOHN DOES 1-10, AND XYZ CORP. 1-10,**<br><br>**DEFENDANTS.** | **CIVIL ACTION No:**<br>**( )**<br><br>**COMPLAINT AND JURY DEMAND** |

Plaintiff, Raymond Bing ("Mr. Bing" or "Plaintiff"), who resides at 403 Avenue A, Bayonne, New Jersey, Hudson County, by way of this Complaint against defendants, Port Authority Trans-Hudson ("PATH"), Greg Gadomski, ("Mr. Gadomski"), John Dempsey ("Mr. Dempsey"), John Does 1-10, and XYZ Corp. 1-10 (hereinafter collectively, "Defendants") hereby says:

## I. Nature of Action, Jurisdiction, and Venue

1. This is an action seeking equitable and legal relief for: (1) a violation of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et. seq*. ("FLSA") (unpaid wages and overtime); (2) breach of implied contract; (3) breach of the implied covenant of good faith and fair dealing; (4) unjust enrichment; and (5) quantum meruit.

2. Jurisdiction is asserted under 28 U.S.C. § 1331 in so far as plaintiff's Complaint asserts claims under the FLSA. Pendent jurisdiction is asserted over plaintiff's state common law claims under 28 U.S.C. § 1367 because they arise out of the same circumstance and are based upon a common nucleus of operative fact.

3. Venue is appropriate in the Newark vicinage of the United States Court for the District of New Jersey in that the illegal and improper acts which are the basis for the within asserted causes of action occurred in Hudson County, New Jersey, Plaintiff works for Defendants in Hudson County, New Jersey and Plaintiff resides in Hudson County, New Jersey. Additionally, PATH maintains a principal place of business located in Hudson County, New Jersey.

## II. Parties

4. Mr. Bing is an employee of PATH, which is a subsidiary of the Port Authority of New York and New Jersey ("Port Authority") and performs job-related duties for PATH in the State of New Jersey.

5. PATH is a subsidiary of the Port Authority, was a bi-state agency, created by Compact between the State of New York and the State New Jersey with approval of the Congress of the United States of America.

6. PATH maintains offices located at 2 Montgomery Street, Jersey City, New Jersey 07302.

7. During the relevant time period, Mr. Gadomski was the Superintendent and Plaintiff's third level supervisor.

8. Additionally Mr. Gadomski was a senior management level employee who controlled Plaintiff's workplace and supervised Plaintiff and ( l) aided and abetted the employer in performing a wrongful act that caused an injury; (2) was generally aware of his role as part of an illegal or tortious activity at the time he provided assistance; and (3) knowingly and substantially assisted the employer in the principal violation of the statutes referenced herein.

9. During the relevant time period, Mr. Dempsey was Assistant Superintendent and Plaintiff's second level supervisor.

10. Additionally Mr. Dempsey was a senior management level employee who controlled Plaintiff's workplace and supervised Plaintiff and (l) aided and abetted the employer in performing a wrongful act that caused an injury; (2) was generally aware of his role as part of an illegal or tortious activity at the time he provided assistance; and (3) knowingly and substantially assisted the employer in the principal violation of the statutes referenced herein.

11. During the relevant time period, JOHN DOES 1-10 are currently unknown employees who were either senior management level employees who controlled Plaintiff's workplace, and supervised plaintiff and aided and/or abetted in the commission of conduct complained of herein and/or who either acted within the scope of their employment at the workplace during working hours, or, to the extent they went beyond the scope of their employment, the corporate Defendant ratified, embraced and added to their conduct. As the parties engage in discovery, plaintiff retains the right to amend the Complaint to add these individual employees by name.

12. During the relevant time period, XYZ Corp. 1-10 are unknown affiliated corporations or entities or other corporations who have liability for the claims set forth herein. As the parties engage in discovery, plaintiff retains the right to amend the Complaint to add these individual entities by name.

13. At all times referred to in this Complaint, employees of the corporate Defendant, who are referred to herein, were acting within the scope of their employment at the workplace during working hours, or, to the extent that they were not so acting, the corporate Defendant.
ratified, embraced and added to their conduct.

14. Thus, all Defendants are subject to suit under the statutes alleged above.

## III. Factual Allegations

15. Mr. Bing began working for PATH on or about February 3, 2014, as a Signal Trainee, at an annual salary of approximately $58,211.

16. On or about September 30, 2019, Mr. Bing was promoted to the position of Signal Supervisor I/FM-4, Band 2, with a corresponding increase in salary to $110,006.

17. As a Signal Supervisor I/FM 4, Band 2, Mr. Bing was tasked with overseeing daily activities related to the operation, inspection, maintenance, testing and repair of PATH's ATC Signal System. Mr. Bing was further responsible for administrative duties, including work assignments, payroll monitoring, daily work reports, and incident reports.

18. At the end of 2022, Mr. Bing received an overall rating on his end of year performance review of "exceptional results," the highest available rating. (Exhibit "1").

19. Commencing in 2023, Mr. Bing was assigned to perform duties of a Signal Supervisor II/FM5/Band 3, about 25% of the time that he was working.

20. Despite this, Mr. Bing continued to be paid at the approximately 10% lower rate of a Signal Supervisor I/FM4/Band 2.

21. Thus, in April 2023 Mr. Bing complained to Chief Signal Supervisors Paul Aviles ("Mr. Aviles") and Edward Diaz ("Mr. Diaz") about Defendants' failure to pay him his proper compensation for the time spent fulfilling duties as a Signal Supervisor II/FM5/Band 3.

22. On April 24, 2023, Mr. Bing sent an email to Mr. Aviles and Mr. Diaz, and others, memorializing that the specific work assigned to him on that date was FM5 work. (Exhibit "2").

23. Despite the fact that Defendants were demanding that Mr. Bing do FM5 work, they failed to pay him wages analogous to what a FM5 employee would receive.

24. However, in response to Mr. Bing's wage complaints, Anthony Deturris ("Mr. Deturris"), Chief Signal Supervisor and Robert Kusnic ("Mr. Kusnic"), Chief Signal Supervisor, stated that Mr. Bing would not be paid at the rate of a Signal Supervisor II/FM5/Band 3 for his FM5/Band 3 work, because he had signed a "last chance" agreement stating that he could not be promoted during the term of that agreement, which remains in effect through November 8, 2026.

25. Thus, Defendants continued to pay Mr. Bing at his Signal Supervisor I/FM4/Band 2 rate while requiring him to fulfill the duties of a Signal Supervisor II/FM5/Band 3.

26. Nonetheless, Mr. Bing continued to perform in a "highly successful" fashion, as reflected on his 2023 end of year performance review. (Exhibit "3").

27. In 2024, Defendants then increased the amount of time that Mr. Bing spent fulfilling Signal Supervisor II/FM5/Band duties to approximately 80% of the time that he was working, but continued to compensate Mr. Bing for all work he performed at a Signal Supervisor I/FM4/Band 2 rate.

28. In addition, during 2024, Mr. Bing was also required to fulfill the duties of a Supervisor III/FM6 about 10% of the time that he was working.

29. FM6 duties are paid at an approximately 10% higher pay rate than FM5 duties. (Exhibit "4 ").

30. Thus, Mr. Bing continued to have multiple conversations with his then supervisor, Mr. Deturris, about his improper compensation, which he memorialized in a written complaint to Mr. Godomski, Mr. Dempsey, John Burkhardt ("Mr. Burkhardt"), Assistant Deputy Director, Thomas Crowell ("Mr. Crowell"), Deputy Director and Stuart Hymowitz, Chief Signal Engineer, on April 16, 2024. (Exhibit "5").

31. However, no remedial measures were taken. Instead, Defendants continued to violate the FLSA with impunity and retaliated against Mr. Bing for his wage and hour complaints.

32. Despite this, Mr. Bing continued to work in an exemplary manner as reflected in the 2024 Annual Performance Review.

33. On January 5, 2025, Mr. Gadomski sent a draft 2025 supervisor assignment memo to all of the Signal Supervisors, including Mr. Bing, which included seven (7) positions for FM5 Signal Supervisors. (Exhibit "6").

34. In early April 2025, Mr. Bing attended a meeting of the Signal Supervisors, Mr. Deturris and Mr. Kusnic, at which job assignments were given out for the positions noted in the January 5, 2025, assignment memo. (Exhibit "6").

35. On April 3, 2025, Mr. Bing sent an email to Mr. Dempsey, Mr. Deturris and Mr. Kusnic documenting his fulfilment of FM5 and FM6 job duties, despite his FM4 title. (Exhibit "7").

36. Further, effective April 27, 2025, Mr. Bing was assigned to the position of Signal Supervisor II/FM5, Band 3, on the 11pm-7am shift, ("Midnight Tour"), as reflected in a memo sent by Mr. Kusnic and Mr. Deturris to the Signal Supervisors, copied to Mr. Gadomski and Mr. Dempsey, on April 23, 2025. (Exhibit "8").

37. Thus, Defendants directed Mr. Bing to perform the responsibilities and duties associated with an FM5/Band 3 position full-time.

38. These duties are materially different from Mr. Bing's prior FM4/Band 2 role.

39. Despite requiring Mr. Bing to perform at a higher level, Defendants have not provided any increase to his compensation.

40. This violates PATH's own documented policies, which clearly state that a promotion or movement from Band to Band warrants an approximate 10% salary increase. (Exhibit "4").

41. Despite this, Mr. Dempsey, Mr. Deturris and Mr. Kusnic continued to erroneously assert that Mr. Bing was not entitled to an increase in pay to the rate for a Signal Supervisor II/FM5/Band 3 position, because he had signed a "Last Chance Agreement" stating that he could not be promoted during the term of that agreement, which purportedly remains in effect through November 8, 2026.

42. Since on or about January 1, 2023, Mr. Bing has been required to perform the duties of a Signal Supervisor II/FM5/Band 3 position as part of his role.

43. Since April 27, 2025, PATH has required that Mr. Bing exclusively perform the duties of a Signal Supervisor II/FM5/Band 3 position.

44. PATH is effectively receiving the benefit of higher-level work from Mr. Bing without providing him with corresponding compensation.

45. The restriction in the Last Chance Agreement pertains to promotions or eligibility for promotion, but it does not authorize PATH to assign higher-level duties to Mr. Bing without compensating him properly.

46. As noted above, PATH's own policies explicitly require a pay increase when an employee assumes a higher-band role. (Exhibit "4").

47. During Mr. Bing's Midnight Tour as Signal Supervisor II/FM5/Band 3, there is no other FM5 working as an FM5.

48. Further, in or about June 2025, Mr. Bing was assigned additional supervisory duties over newly hired Signal Supervisor I/FM 4, Band 2 employees, Dan Freer, David Zalbedeen, Norberto Rivera, and Enoch Azzu.

49. Mr. Bing trained these reports, who are not permitted to work independently unless Mr. Bing is present.

50. Thus, since April 27, 2025, Mr. Bing has been working full-time in the capacity of a Signal Supervisor II/FM5/Band 3, which reflected Mr. Bing's move from a Band 2 position to a Band 3 position, without proper compensation.

51. Despite the fact that Mr. Bing should have received at least a 10% salary increase for his working as a Signal Supervisor II/FM5/Band 3, PATH has failed to pay Mr. Bing any increase in his annual salary.

52. Defendants also failed to pay Mr. Bing at the proper rate of compensation for the time he spent performing FM6 duties during 2024, which he estimates to be approximately 10% of the hours that he worked.

53. Defendants continued to underpay Mr. Bing his regular and overtime pay by at least 10%.

54. Despite the wage violations, Mr. Bing has continued to perform his duties in an outstanding manner.

55. Mr. Bing once again received the highest rating of "Exceptional Results" on his 2025 end of year performance review and a performance award salary adjustment, in line with an FM4, Band 2 position, to $139,984, as of January 1, 2026.

56. On January 30, 2026, Mr. Kusnic circulated an email and attached assignment list which continues Mr. Bing in his position of FM5/Band 3 Midnight Tour to present. (Exhibit “9”).

57. On May 26, 2026, Mr. Bing met with Mr. Burkhardt and Mr. Deturris to discuss his wage complaints.

58. Once again Mr. Burkhardt erroneously stated that Mr. Bing did not have to be paid any increase in his pay, despite his working as in the higher level FM5/Band 3 position, because of his Last Chance Agreement’s prohibition on promotions during its term.

59. When Mr. Bing pushed back on Mr. Burkhardt’s mistaken assertion, Mr. Burkhardt became incensed.

60. Mr. Bing estimates that, as a result of PATH’s underpayment of Mr. Bing’s regular and overtime compensation since January 1, 2023, as of June 1, 2026, he is owed a total of approximately $74,722 in regular and overtime pay, in violation of the FLSA, plus liquidated damages of $74,722, for a total of $149,444, and attorney’s fees and costs.

61. This is a continuing violation and Mr. Bing’s damages continue to accrue.

## Count I

**(Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §201, *et seq.*)**
**(Unpaid Wages and Overtime)**

62. Plaintiff realleges and incorporates herein the paragraphs set forth in this Complaint.

63. At all times relevant herein, PATH was and continues to be an “employer” within the meaning of the FLSA.

64. At all times relevant herein, PATH was responsible for paying wages to Mr. Bing.

65. At all times relevant herein, Mr. Bing was employed with PATH as an “employee” within the meaning of the FLSA.

66. Since on or about January 1, 2023, Defendants have knowingly and repeatedly failed to pay Mr. Bing his proper rate of compensation for regular hours worked up to forty hours per week and his proper overtime rate for hours worked in excess of forty hours a week, in violation of the FLSA.

67. Defendants’ conduct in failing to properly pay Mr. Bing is/was willful and is/was not based upon any reasonable interpretation of the law.

68. Defendants’ conduct has caused and continues to cause Mr. Bing to suffer damages.

69. Under the provisions of the FLSA, there is due and owing from Defendants to Mr. Bing compensation for underpaid regular and overtime wages in an amount to be determined at trial, plus liquidated damages, reasonable attorneys' fees and costs, and such other relief this court deems equitable and just.

**Count II**

**(Breach of Implied Contract)**

70. Plaintiff realleges and incorporates herein the paragraphs set forth in this Complaint.

71. Defendants had various contractual obligations to Mr. Bing implied from Defendants' oral promises, representations and those contained in employment documents, handbooks, guidelines, etc. that pertained to plaintiff.

72. For example, PATH's own documented policies clearly state that a promotion or movement from Band to Band warrants an approximate 10% salary increase. (Exhibit "4").

73. Defendants violated these and other oral and written representations.

74. The actions of Defendants give rise to the claim of breach of implied contract.

75. As a direct and proximate result of the actions of defendants, Plaintiff has suffered mental anguish, physical discomfort, pain and suffering, shame and embarrassment, emotional distress injuries, the physical manifestation of emotional distress injuries and/or physical injury. Furthermore, plaintiff has suffered lost wages, a diminished ability to earn a living, and a diminished capacity to enjoy plaintiff's life. Moreover, plaintiff has and/or may have to incur expenses for medical, psychiatric, and/or psychological counseling and care. Plaintiff's damages have been experienced in the past, and they will continue into the future.

76. Further, plaintiff has been required to retain an attorney to assist plaintiff in asserting plaintiff's claims and protecting plaintiff's rights.

**Count III**

**(Breach of the Implied Covenant of Good Faith and Fair Dealing)**

77. Plaintiff realleges and incorporates herein the paragraphs set forth in this Complaint.

78. Defendants had express and implied contractual obligations to Mr. Bing as reflected above (the "Implied Contract").

79. Defendants breached these contractual obligations.

80. The Implied Contract contained an implied covenant of good faith and fair dealing.

81. Defendants' actions give rise to the claim of breach of the implied covenant of good faith and fair dealing, by, *inter alia,* conduct which was reasonably anticipated, if not directly aimed, to deprive Mr. Bing of the benefit for which he bargained, as well as to frustrate the purposes and intentions of the Contract.

82. The actions of Defendants give rise to the claim of breach of the implied covenant of good faith and fair dealing.

83. As a direct and proximate result of the actions of Defendants, Mr. Bing has suffered damages, lost income, consequential damages, and attorneys' fees and costs.

## Count IV

### (Unjust Enrichment)

84. Plaintiff realleges and incorporates herein the paragraphs set forth in this Complaint.

85. The actions of Defendants give rise to a claim of unjust enrichment.

86. Since on or about January 1, 2023, Mr. Bing has been required to perform the duties of a Signal Supervisor II/FM5/Band 3 position as part of his role.

87. Since April 27, 2025, PATH has required that Mr. Bing exclusively perform the duties of a Signal Supervisor II/FM5/Band 3 position.

88. PATH is effectively receiving the benefit of higher-level work from Mr. Bing without providing him with corresponding compensation.

89. Mr. Bing performed services for Defendants in good faith.

90. Defendants accepted those services.

91. Mr. Bing expected to be compensated for the reasonable value of his services.

92. Defendants were unjustly enriched by the services performed by Plaintiff.

93. By reason thereof, based upon principals of unjust enrichment, Plaintiff is entitled to the value of the services performed for Defendants and the enrichment he caused to Defendants.

94. Further, Plaintiff has been required to retain an attorney to assist Plaintiff in asserting Plaintiff's claims and protecting Plaintiff's rights.

**Count V**

**(Quantum Meruit)**

95. Plaintiff realleges and incorporates herein the paragraphs set forth in this Complaint.

96. The actions of Defendants give rise to a claim of quantum meruit.

97. Since on or about January 1, 2023, Mr. Bing has been required to perform the duties of a Signal Supervisor II/FM5/Band 3 position as part of his role.

98. Since April 27, 2025, PATH has required that Mr. Bing exclusively perform the duties of a Signal Supervisor II/FM5/Band 3 position.

99. PATH is effectively receiving the benefit of higher-level work from Mr. Bing without providing him with corresponding compensation.

100. Mr. Bing performed services for Defendants in good faith.

101. Defendants accepted those services.

102. Mr. Bing expected to be compensated for the reasonable value of his services.

103. By reason thereof, based upon principals of quantum meruit, Plaintiff is entitled to the value of the services performed for Defendants and the enrichment he caused to Defendants.

104. Further, Plaintiff has been required to retain an attorney to assist Plaintiff in asserting Plaintiff's claims and protecting Plaintiff's rights.

**WHEREFORE**, as to each and every count, Plaintiff demands judgment on each and all of these Counts against defendants, jointly and severally, as follows:

A. Compensatory damages;

B. Damages for lost wages and benefits, back pay, front pay;

C. Damages for humiliation, mental and emotional distress;

D. Statutory damages, if applicable;

E. Liquidated damages;

F. Promoting Plaintiff to the appropriate promotional level;

G. Increasing Plaintiff's salary to the appropriate level;

H. Punitive damages and or liquidated damages where permitted by law;

I. Attorneys' fees and costs of suit;

J. Lawful interest - including pre-judgment interest on lost wages;

K. Lawful interest - including pre-judgment interest on any wages not paid in a timely manner; and

L. Such other, further and different relief as the Court deems fitting, just and proper.

Plaintiff hereby reserves the right to amend this Complaint to supplement or modify the factual allegations and claims contained herein, based upon information received from the Defendants, witnesses, experts, and others in the course of discovery in this matter.

**DEMAND FOR TRIAL BY JURY**

Plaintiff respectfully demands a trial by jury on all issues in the within action so triable.

**DESIGNATION OF TRIAL COUNSEL**

TY HYDERALLY is hereby designated as trial counsel on behalf of Plaintiff.

**CERTIFICATION OF NO OTHER ACTIONS OR PARTIES**

I hereby certify that the matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, that no other action or arbitration proceeding is contemplated, and that there are no other parties known to me at this time who should be joined as parties to this action.

**DEMAND FOR PRODUCTION OF INSURANCE AGREEMENTS**

Demand is hereby made that you disclose to the undersigned whether there are any insurance agreements or policies under which any person or firm carrying on an insurance business may be liable to satisfy all or part of a judgment which may be entered in the action or to indemnify or reimburse for payment made to satisfy the judgment.

If so, please attach a copy of each, or in the alternative state, under oath and certification: (a) policy number; (b) name and address of insurer; (c) inception and expiration date; (d) names and addresses of all persons insured thereunder; (e) personal injury limits; (f) property damage limits; and (g) medical payment limits.

DATED: August 3, 2026

**HYDERALLY & ASSOCIATES, P.C.**
***Attorneys for Plaintiff***



**By:** ______________________________
**TY HYDERALLY, ESQ.**
**For the Firm**

Hyderally & Associates/Active Case Files/Bing Raymond/Pleadings/080326.COM.docx